[No. 8373.   Department One.   January 8, 1910.]

NORTH AMERICAN DREDGING COMPANY, *Appellant*, v. C. J. TAYLOR, *as Treasurer of Chehalis County, Respondent*.[1]

TAXATION — PERSONAL PROPERTY — SITUS — STEAM DREDGER. A dredger built in, and engaged for two years in government work in, a county of this state, has its situs for taxation in this state, although its home port and ownership is in another state; and the fact that it was seaworthy and had sufficient power to propel itself on the high seas does not bring it within the rule requiring vessels engaged in interstate traffic or sailing from one port to another to be assessed at their home ports or the domicile of her owners.

SAME—OWNERS—INTENTION TO REMOVE FROM STATE. The use of a dredger for indefinite periods in a harbor where it may be engaged in

[1]Reported in 106 Pac. 162.

work impresses it with a local character, and the declared intention of its nonresident owners to remove it from the state as soon as its contract for work is completed, does not exempt it from taxation at the place where found.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered June 1, 1909, in favor of the defendant, upon an agreed statement of facts, dismissing an action to enjoin the seizure and sale of personal property to satisfy a tax. Affirmed.

*W. H. Abel*, for appellant.

*Wm. E. Campbell* and *J. L. McMurray* (*H. G. Rowland*, of counsel), for respondent.

CHADWICK, J.—The steam dredger "Pacific" was built at Tacoma, in Pierce county, Washington, in the year 1903, and was from that time until about April 7, 1905, almost continuously engaged in dredging, or was lying in the harbors of Pierce county. In the year 1904, appellant listed the dredger and its equipment for taxation in Pierce county, and thereafter paid the taxes for that year. The property was also listed by the superintendent in charge for the year 1905. On April 1, 1905, and for some time prior thereto, appellant had been engaged in the performance of a government contract in the harbor at Tacoma. This contract expired on March 1, 1905, and was completed under an extension agreement. On April 9, 1905, the Pacific was taken, with all its equipment and appliances, to Honolulu, in the Hawaiian Islands, by way of San Francisco, California, there to be engaged for a definite period. The dredger was a seagoing, self-propelling vessel. On or about November 2, 1907, the dredger was brought from without the state of Washington to Grays Harbor, in Chehalis county, and was there engaged in dredging the harbor under a contract with the United States government, expiring on or before the 15th day of October, 1908. On or about March 5, 1908, the respondent, as treasurer of Chehalis county, was about to

seize and sell the Pacific with all equipment, appurtenances and appliances, under a writ issued by the treasurer of Pierce county, when he was restrained by an order of the superior court of Chehalis county.

The fact is further stipulated that the person who signed the detail list for 1905 was the superintendent of the dredger, having authority to purchase supplies, contract for repairs, to employ labor, and issue time checks for the payment of labor, and that, if the officers of appellant were present, they would testify that the superintendent had no authority to list the said property for taxation. It also appears that in 1903 the dredger was temporarily enrolled in the office of the collector of customs at Tacoma, under a carpenter's certificate; that the home port of the dredger was given at that time as Camden, New Jersey; that the name and port were painted on the stern of the dredger, as required by law, just prior to her sailing for San Francisco. This was done under an order of the shipping commissioner. The fact is also stipulated that at all times during the performance of the government contract in Tacoma harbor, it was the intention of the appellant to remove the dredger from Tacoma and from the state of Washington as soon as the government contract should be completed. Upon the hearing in the court below, the prayer of appellant for a restraining order was denied, and judgment was entered in favor of respondent.

Error is assigned as follows:

"(1)  It was error to hold that the 'Pacific' had a situs in 1905, for purposes of taxation, within the state of Washington.

"(2)  Appellant was deprived of its property without due process of law, contrary to Art. 14 of the Federal Constitution.

"(3)  It was error to render judgment, denying an injunction and sustaining the validity of said tax."

If the trial court was right in holding the state of Washington to be the situs of the property, that fact is de-

cisive of the case, as the second and third assignments are only incidental thereto. It is the general rule that vessels engaged in state or interstate traffic with no established situs, but going in and out of a port upon a fixed run or as the necessities of the business engaged upon may demand, or when engaged upon no fixed schedule, but sailing from one port to another as a carrier of state, interstate, or international traffic, shall be assessed at the home port, or at the domicile of the owner. *Northwestern Lumber Co. v. Chehalis County*, 25 Wash. 95, 64 Pac. 909, 87 Am. St. 747, 54 L. R. A. 212; *Ayer & Lord Tie Co. v. Kentucky*, 202 U. S. 409; *Commonwealth v. American Dredging Co.*, 122 Pa. St. 386, 15 Atl. 443, 9 Am. St. 116, 1 L. R. A. 237; *California Shipping Co. v. City and County of San Francisco*, 150 Cal. 145, 88 Pac. 704; *Olson v. City and County of San Francisco*, 148 Cal. 80, 82 Pac. 850, 113 Am. St. 191, 2 L. R. A. (N. S.) 197; *Johnson v. De Bary-Baya Merchants' Line*, 37 Fla. 499, 19 South. 640, 37 L. R. A. 518; *American Mail Steamship Co. v. Crowell* (N. J.), 68 Atl. 752; *People ex rel. Pacific Mail Steamship Co. v. Commissioners etc. of New York*, 58 N. Y. 242.

However, a vessel may be assessed without reference to the home port or the residence of the principal owner or agent, when it is put to such use as to impress it with a local character. *National Dredging Co. v. State*, 99 Ala. 462, 12 South. 720; *McRae v. Bowers Dredging Co.*, 90 Fed. 360; *Galveston v. Guffey Petroleum Co.* (Tex. Civ. App.), 113 S. W. 585; *State v. Higgins Oil & Fuel Co.* (Tex. Civ. App.), 116 S. W. 617; *Old Dominion Steamship Co. v. Virginia*, 198 U. S. 199; *Id.*, 102 Va. 576, 46 S. E. 783, 102 Am. St. 855. It has been held that the declared intention of the owner concerning the future use or removal of personal property will not exempt it from taxation. *Stoddart v. Ward*, 31 Md. 562.

The Pacific was built in Pierce county, and never had any other situs. The character of its use was not such as to bring it within the rule allowing taxation at the home port

or at the home of the owner or agent. That rule applies only when the use is transitory. The true rule is stated in *National Dredging Co. v. State, supra,* wherein the court said:

"It [the dredger] is here as any other property is or would be here in use upon the public works in Mobile bay. Its use in that work is the same as that of the other property originally embraced in this assessment, and formerly owned by a citizen of Alabama, and by him devoted to this work during previous years, the same as that of the scow which was built in Mobile for this work and has never been beyond the state, and the same as that of another scow built outside of the state for this work. All this other property is property of the state or in the state for the purposes of taxation, though it may at some uncertain future time cease to be property taxable here in consequence of its removal to other jurisdictions, as the property in controversy may some time be carried out of the state. Until that happens, however, both classes of property enjoy the same protection of our laws; both classes are devoted to the same use, the continuation of each class within the state is alike indefinite—the one class cannot, in short, be distinguished from the other in any characteristic which is of importance in determining the question of taxability *vel non*; and hence our conclusion that the property in controversy had become so incorporated with, and a part of, the tangible property of this state, for revenue purposes, as that its taxable *situs* is here notwithstanding the fact that the domicile of its owner is in another state. *Mayor of Mobile v. Baldwin,* 57 Ala. 61; *Boyd v. City of Selma,* 96 Ala. 144, 11 South. 393; Burroughs on Taxation, pp. 40, 41; *Trammell v. Connor,* 91 Ala. 398, 8 South. 495. There is nothing in the nature of this particular property to take it out of the general principle. The fact that it is floating property, and may be moved from place to place and port to port by water, furnishes no more reason for exempting it from taxation here than would exist for the exemption of property which did not float, and could be moved from place to place only overland."

There must be some reasonable limit to the rule that overcomes the ordinary rule of situs when applied to such

property, and we think it must be found in the answer to the question whether the presence in Pierce county of the dredger was temporary or merely indefinite. If the former, it would probably not be taxable. If the latter, it would be, so long as it was there at a time when the levy was made and the lien attached. Otherwise the property might remain an indefinite time running over the period of a dozen contracts, or so long as it found profitable employment, and yet be exempt from taxation, although during the whole time the property would receive the protection of the local laws. If the intention merely were allowed to control, we opine that property of this character would never be taxed, unless the conscience of the owner moved him to list it at the home port or at his domicile, which under the facts of this case he would not be bound to do. *American Mail Steamship Co. v. Crowell, supra.*

The exceptions to the precept that property shall be assessed at the place where found either depends upon a statute or results as a rule of necessity to the state and of protection to the owner. Otherwise property would escape taxation altogether, or be subject to a tax wherever it might be found, thus leading to double taxation. No statute is relied upon in this case, and we find none of the elements of necessity which moved the courts in pronouncing the decisions announced in the cases first cited in this opinion. While the Pacific was a sea-going vessel in the sense of being seaworthy and having sufficient power to propel itself over the high seas, it is not engaged, and it never was intended that it should be engaged, in commerce on the high seas, or to sail from port to port as a carrier in inland waters. The purpose for which it was constructed demands that it remain for indefinite periods in whichsoever harbor it may be engaged. Its character and its use give it a situs, and that situs must be held to follow its physical presence, and the power to tax cannot be overcome by any intention to remove it at a future time, be it greater or less, or because

of its sea-going qualities. It comes within the same category as a pile driver or a switch engine, or other property of like character and use.

The judgment is affirmed.

RUDKIN, C. J., FULLERTON, MORRIS, and GOSE, JJ., concur.