[Civ. No. 21178.   Second Dist., Div. One.   Mar. 28, 1956.]

SLICK AIRWAYS, INC. (a Corporation), Respondent, v. COUNTY OF LOS ANGELES et al., Appellants.

Harold W. Kennedy, County Counsel, and Gordon Boller, Assistant County Counsel, for Appellants.

John W. Walbert for Respondents.

FOURT, J.—By this action Slick Airways, Inc., is seeking to recover from the county of Los Angeles and the city of Santa Monica taxes paid under protest to said county

and collected by it for its own account and for the city of Santa Monica. Defendants demurred to the complaint. The demurrer was overruled with leave to answer and defendants not having answered, judgment was rendered in favor of plaintiff. Defendants have appealed.

Plaintiff is engaged in flying a fleet of airplanes in interstate and foreign commerce. Such airplanes, under the practice of the county assessor of Los Angeles County, are assessed on the basis of a fair allocation of time, to wit, the ratio of the time spent in Los Angeles County as compared to total time. For the year 1953, this allocation was determined by computing the total hours in Los Angeles County of all plaintiff's fleet aircraft during the week immediately preceding the assessment date and determining the percentage that time bore to the total hours in the week  This ratio was then applied to the assessed value of the fleet to determine the proper assessable value thereof in Los Angeles County.

The tax which plaintiff seeks to recover is the tax on an airplane which was assessed not as a part of plaintiff's fleet but as a single airplane. Such classification of the aircraft as a separate item instead of as a part of the fleet resulted in a higher assessed valuation.

In its complaint plaintiff alleges that it is a Delaware corporation authorized to transact business in California; that its aircraft are flown exclusively in interstate or foreign commerce; the airplane in question was manufactured for it by Douglas Aircraft Company in the city of Santa Monica, where it was delivered to and accepted by plaintiff on February 27, 1953; the aircraft was purchased for the exclusive purpose of adding to plaintiff's fleet of aircraft flying in interstate commerce; prior to acceptance on February 27, 1953, plaintiff conducted a check flight on the airplane and from March 4, to March 8, 1953, plaintiff conducted daily necessary "shakedown and crew familiarization" flights of the airplane; the first scheduled revenue flight of the aircraft took place on March 12, 1953; at all times subsequent to February 27, 1953, plaintiff considered said airplane to be part of its fleet of airplanes flown in interstate and foreign commerce.

The sole question for determination is whether plaintiff's airplane was erroneously classified and valued by the assessor as an individual item of property in the county rather than as a part of plaintiff's fleet of aircraft operating in interstate and foreign commerce.

Defendants contend that the taxable status of property is fixed as of 12 o'clock noon on the first Monday in March; that on that date the aircraft in question was not a part of respondent's fleet flying in interstate and foreign commerce and that therefore the assessment as an individual item of property was proper, such assessment having been made according to the condition and status of the property on the controlling tax date. Defendants further contend that the tax apportionment doctrine of *Pullman's Palace Car Co.* v. *Commonwealth of Pennsylvania,* 141 U.S. 18 [11 S.Ct. 876, 35 L.Ed. 613], upheld in *Ott* v. *Mississippi Valley Barge Line Co.,* 336 U.S. 169 [69 S.Ct. 432, 93 L.Ed. 585], *Standard Oil Co.* v. *Peck,* 342 U.S. 382 [72 S.Ct. 309, 96 L.Ed. 427, 26 A.L.R.2d 1371] and *Braniff Airways* v. *Nebraska State Board,* 347 U.S. 590 [74 S.Ct. 757, 98 L.Ed. 967], is inapplicable in the present instance for the reason that the airplane had not become a part of respondent's fleet nor was it available for use therein on the tax date.

The basis of the doctrine in the Pullman case, *supra,* is the continuous benefits or protection afforded by the taxing state throughout the tax year to a portion of the commerce, and the formula approved was one which fairly apportioned the tax to the commerce carried on within the state. Thus, in *Standard Oil Co.* v. *Peck, supra,* it was held that it was a violation of the due process clause of the Fourteenth Amendment for the state of domicile of a corporation which transported oil on inland waters to levy a property tax on all of the corporation's vessels engaged in such transportation when it appeared that most, if not all, were almost continually outside of the domiciliary state during the tax year. The court said, at pages 384-385, "The rule which permits taxation by two or more states on an apportionment basis precludes taxation of all of the property by the state of domicile. See *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U.S. 194 [26 S.Ct. 36, 50 L.Ed. 150, 4 Ann.Cas. 493]. Otherwise there would be multiple taxation of interstate operations and the tax would have no relation to the opportunities, benefits, or protection which the taxing state gives those operations."

In *Ott* v. *Mississippi Valley Barge Line Co., supra,* it was held that the Commerce Clause of the federal Constitution did not preclude the assessment, on an apportionment basis, for local ad valorem taxes, of vessels owned by a carrier engaged in interstate commerce and used within the taxing state. The court stated, at page 174: "The problem under

the Commerce Clause is to determine 'what portion of an interstate organism may appropriately be attributed to each of the various states in which it functions.' *Nashville, C. & St. L. R. Co.* v. *Browning,* 310 U.S. 362, 365 [60 S.Ct. 968, 84 L.Ed. 1254, 1255]. So far as due process is concerned the only question is whether the tax in practical operation has relation to opportunities, benefits, or protection conferred or accorded by the taxing State. See *Wisconsin* v. *J. C. Penney Co.,* 311 U.S. 435, 444 [61 S.Ct. 246, 85 L.Ed. 267, 270, 130 A.L.R. 1229]. Those requirements are satisfied if the tax is fairly apportioned to the commerce carried on within the State.''

The case of *Braniff Airways* v. *Nebraska State Board, supra,* 347 U.S. 590 [74 S.Ct. 757, 98 L.Ed. 967], involved an ad valorem tax levied by the state of Nebraska on the flight equipment of an interstate air carrier which made regularly scheduled stops within the state but was not incorporated there and did not have its principal place of business or home port there. The Supreme Court, in upholding the validity of the tax, said, at page 600: ''The limitation imposed by the Due Process Clause upon state power to impose taxes upon such instrumentalities was succinctly stated in the Ott Case: 'So far as due process is concerned the only question is whether the tax in practical operation has relation to opportunities, benefits, or protection conferred or afforded by the taxing State.' 336 U.S. at 174. In *Curry* v. *McCanless,* 307 U.S. 357 [59 S.Ct. 900, 83 L.Ed. 1339, 123 A.L.R. 162], the evolution of such restriction on state power was reviewed and the rule stated thusly:

'' 'When we speak of the jurisdiction to tax land or chattels as being exclusively in the state where they are physically located, we mean no more than that the benefit and protection of laws enabling the owner to enjoy the fruits of his ownership and the power to reach effectively the interests protected, for the purpose of subjecting them to payment of a tax, are so narrowly restricted to the state in whose territory the physical property is located as to set practical limits to taxation by others.' *Id.* 307 U.S. at 364.

''Thus the situs issue devolves into the question of whether eighteen stops per day by appellant's aircraft is sufficient contact with Nebraska to sustain that state's power to levy an apportioned ad valorem tax on such aircraft. We think such regular contact is sufficient to establish Nebraska's power to tax even though the same aircraft do not land every

day and even though none of the aircraft is continuously within the state. 'The basis of the jurisdiction is the habitual employment of the property within the State.' "

Plaintiff is a nondomiciliary corporation engaged solely in interstate and foreign commerce. The airplane in question was purchased by it for the exclusive purpose of adding to plaintiff's fleet of aircraft flying in interstate commerce. Although on the first Monday in March the airplane had not made a flight in interstate commerce, it was engaged in "shakedown and crew familiarization" flights preparatory thereto and it was reasonably apparent to all interested parties that it would be in actual commercial operation during all the tax year except for a very small portion thereof.

■ Generally speaking the taxable status of property is determined as of some fixed date in most local jurisdictions (see 51 Am.Jur., Taxation, pp. 457-458, § 442) and in California that date is 12 o'clock meridian on the first Monday in March. (Rev. & Tax. Code, § 405.) But the rule which permits that state in which property is physically located on a specific tax date to tax it at full value must yield to the extent required by the due process and commerce clauses of the federal Constitution, and the assessment of taxes on property which receives benefits in more than one state during the tax year is governed by the rule of apportionment. Plaintiff's aircraft was to all intents and purposes part of its fleet operating in interstate and foreign commerce and would receive the benefits or protection of more than one state during the tax year.

The judgment is affirmed.

White, P. J., and Doran, J., concurred.